UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM ROBERT SHAW,

        Plaintiff,

        v.                                    Case No. 20-C-1544

CITY OF MILWAUKEE, CHIEF EDWARD FLYNN,
FIRE AND POLICE COMMISSION,
THOMAS WROBLEWSKI, ANGELA GONZALEZ,
and PATRICK ELM,

        Defendants.

## SCREENING ORDER

Plaintiff William Robert Shaw, who is incarcerated, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging the defendants violated his constitutional rights. This order resolves Shaw's motion for leave to proceed without prepaying the filing fee and his motion for a class action certification order, and screens his complaint.

**A. Motion for Leave to Proceed without Prepaying the Filing Fee**

Shaw has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Shaw filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2) and has been assessed an initial partial filing fee of $1.67. On October 28, 2020, Shaw filed a letter with the court showing that he lacks the funds to pay the initial partial filing fee, and on November 9, 2020, he filed an updated trust account statement showing a negative balance. Therefore, the court grants Shaw's motion for

leave to proceed without prepaying the filing fee and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4). Shaw will have to pay the full filing fee over time as explained in this order.

## B. Motion for Class Action Certification Order

Shaw filed a motion asking the court for an order to allow him to bring this case as a class action. Under Federal Rule of Civil Procedure 23(a), a plaintiff can sue as a representative of or on behalf of parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In particular, because of the requirement under Rule 23(a)(4) that a class have adequate representation, courts have repeatedly declined to allow *pro se* prisoners to represent a class in a class action. *See, e.g.*, *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that it would be plain error to permit imprisoned pro se litigant to represent his fellow inmates in a class action); *Caputo v. Fauver*, 800 F. Supp. 168, 169–70 (D.N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action."). Because the plaintiff has not satisfied the requirement of Rule 23(a), the plaintiff can only bring the claims in his individual capacity and not on behalf of a class. The court denies his motion.

## C. Screening the Complaint

### 1. Federal Screening Standard

Under the PLRA, a court must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2. Plaintiff's Allegations

On November 16, 2016, while Shaw was walking down the street near his house to his rental car, Defendants Milwaukee police officer Angela Gonzalez and Sergeant Thomas Wroblewski ordered Shaw "to stop walking and provide his name because of his race and color, not because he had committed any legal violations." Dkt. No. 1, ¶ 21. Wroblewski frisked Shaw and placed him in the back of his squad car. Shaw alleges that the officers did not have probable cause.

After driving Shaw through vacant alleys near his house, Gonzalez took a phone call. At the end of the call, Gonzalez told Shaw he was wanted for murder. Wroblewski then arrested Shaw for homicide and searched Shaw again. Shaw alleges that Defendant Milwaukee police officer Patrick Elm observed the arrest and failed to intervene.

Shaw repeatedly told Gonzalez and Wroblewski he had not committed any homicides, but Wroblewski and Gonzalez ignored him, taking Shaw to his rental car. They searched it but did

3

not find any contraband. Shaw asserts they falsely told the rental car company they had conducted a traffic stop with the driver of the rental car. Shortly after this, Shaw alleges he "was uncuffed and released on the scene." *Id.* ¶ 46. Shaw does not state why he was suddenly released.

Shaw asserts that Gonzalez and Wroblewski arrested him because of his race. He alleges they did so pursuant to a Milwaukee Police Department policy that authorized officers to stop-and-frisk without probable cause. He further alleges the stop-and-frisk program was designed to target Black and Latino individuals, and the policy began in 2008 and was in effect at the time Gonzalez and Wroblewski detained him. He states that defendant Chief Edward Flynn was aware of the policy and knew that his officers were detailing people of color unlawfully on the basis of race pursuant to the policy. He also states that the Milwaukee Fire and Police Commission knew about the policy and incorporates by reference a class action suit from February 2017 that challenged the policy as racist and unconstitutional.

Shaw also submitted complaints to the Fire and Police Commission about his February 2016 arrest. An investigator named "Patane" called Shaw and informed him that the investigation uncovered no misconduct. Shaw alleges that Patane conducted an inadequate investigation and complained to her supervisors.

Shaw seeks compensatory damages, punitive damages, and fees. He sues the defendants in their individual and official capacities. He also seeks declaratory relief against the Fire and Police Commission including hiring and properly training additional investigators, updating policies to create more transparency where complaints are filed against police officers, and requiring all Milwaukee police officers to be equipped with body cameras.

### 3. Analysis

Shaw claims that Wroblewski and Gonzalez violated his Fourth Amendment rights when they stopped and frisked him, arrested him, and searched his car without probable cause. Under

4

the Fourth Amendment, "[i]n order to conduct an 'investigatory stop' consistent with *Terry v. Ohio*, 392 U.S. 1 (1968), 'an officer must be aware of specific and articulable facts giving rise to reasonable suspicion' that there may be criminal activity occurring." *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) (quoting *Jewett v. Anders*, 521 F.3d 818, 823–25 (7th Cir. 1994) (internal citations omitted). Also, "officers are not free to pat down citizens at will. A law enforcement officer can conduct a 'protective pat-down search' during a *Terry* stop only if the officer has 'at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the [officer] or others.'" *Id.* (quoting *United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001)). Regarding arrest, "'[a] police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonable trustworthy information would warrant a prudent person to believe that the suspect had committed or was committing an offense.'" *Fleming v. Livingston Cty., Illinois*, 674 F.3d 874, 879 (7th Cir. 2012) (quoting *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999)). Additionally, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

Shaw alleges that seemingly out of nowhere, defendants Gonzalez and Wroblewski stopped him, frisked him, and put him in the back of a squad car and arrested him for homicide. Then they searched his rental car while he was restrained in the back of a squad car. At this stage, Shaw sufficiently alleges search and seizure violations under the Fourth Amendment and may proceed on those claims against Gonzalez and Wroblewski.

Shaw also brings a failure to intervene claim against Defendant Patrick Elm. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing on the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that

5

excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Shaw alleges Elm observed his unlawful seizure. While his allegations against Elm lack detail, at this stage, Shaw may proceed on a failure to intervene claim against Elm.

Additionally, Shaw claims that Gonzales, Wroblewski, Chief Flynn, the City of Milwaukee, and the Fire and Police Commission violated his Fourteenth Amendment rights because he was stopped on account of his race pursuant to a Milwaukee Police Department stop-and-frisk policy designed to target Black and Latino individuals. Courts have allowed similar claims under the Fourteenth Amendment's Equal Protection Clause to proceed at this early juncture in the case. *See Casimir v. City of Chicago*, No. 15-C-3771, 2017 WL 896768 (N.D. Ill. Mar. 7, 2017) (allowing the plaintiff to proceed because the plaintiff's second amended complaint, while lacking detail, linked the two stop-and-frisk incidents at issue to the Chicago Police Department's policy on stop-and-frisk and included allegations showing a disproportionate number of Black individuals were stopped under the policy). Shaw alleges a specific stop-and-frisk policy of the Milwaukee Police Department, the time frame under which it operated, and details of a class action lawsuit showing the policy had a disproportionate impact on people of color in the Milwaukee community. He also alleges that Gonzalez and Wroblewski stopped him pursuant to this policy.

Shaw's allegations that the actions of Gonzalez and Wroblewski were racially motivated are conclusory because he offers no details other than his belief that he was detained on the basis of race and color. Given his allegation that there was no legitimate reason for their actions and reference to the Class Action lawsuit in this district alleging such a policy during the same time,

6

Shaw's Equal Protection claims will be allowed to proceed. The equal protection claim against Chief Flynn may proceed under a theory of supervisor liability because Shaw alleges that he knew about the policy and approved it. *See Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). The claim against the City of Milwaukee and the Fire and Police Commission may proceed under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–691 (1978), because Shaw has alleged the unconstitutional stop-and-frisk was a result of a municipal policy that the Fire and Police Commission oversaw. The court recognizes that the equal protection claims would likely substantially increase the potential discovery and complexity of the case, however, and will therefore consider a motion to bifurcate the claims in order to save time and resources once the defendants have appeared and filed their response.

Shaw sues the defendants in their official as well as individual capacity. It is well-established that suing a municipal official in his or her official capacity is the same thing as suing the municipality. *Schonecker v Koopman*, 348 F. Supp. 3d 745, 749 (E.D. Wis. 2018). Because the court is allowing Shaw to proceed against the municipality, he does not need to sue the remaining defendants in their official capacities. Shaw also brings a Wisconsin state law claim under Wis. Stat. § 895.46, alleging that the City of Milwaukee should be held responsible under a theory of tort liability for the actions of its employees. At this stage, the court exercises supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

### D. Conclusion

**THEREFORE, IT IS ORDERED** that Shaw's motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Shaw's motion for a class action certification order (Dkt. No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4. Shaw is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The U.S. Marshals Service will give Shaw information on how to remit payment. The court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of Shaw shall collect from his institution trust account the full $350.00 filing fee by collecting monthly payments from Shaw's prison trust account in an amount equal to 20% of the preceding month's income credited to Shaw's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Shaw is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the Milwaukee County Sheriff and to Dennis Brand, 821 W. State Street, Room 224, Milwaukee, WI 53233.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Shaw is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 3rd day of December, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge