UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM ROBERT SHAW,

    Plaintiff,

v.                                        Case No. 20-C-1544

RANDY PIONTKOWSKI,

    Defendant.

## DECISION AND ORDER

Plaintiff William Robert Shaw is representing himself in this 42 U.S.C. §1983 action. On February 8, 2024, the jury returned a verdict in favor of Defendant Randy Piontkowski. Dkt. No. 182. Following the two-day jury trial, Plaintiff filed two motions for a new trial under Federal Rule of Civil Procedure 59(a), a motion to amend the jury verdict under Rule 60(b)(3), a motion for sanctions based on purported "discovery fraud," and an "objection" to the use of a stun belt during trial. Dkt. Nos. 188-190. Hoping that the motions could be promptly resolved and because the defendant did not have access to transcripts in responding to Plaintiff's motions, the court originally denied Plaintiff's motion for transcripts but extended his time for filing his reply in three separate orders. Dkt. Nos. 198, 201, 208 By the time the motions became fully briefed, however, the court could no longer recall some of the events that occurred during the trial. The court therefore ordered transcripts so that it could fully address Plaintiff's motions. Now, having reviewed the record, the court denies those motions for the reasons set forth below.

1. **Plaintiff's motions for a new trial under Rule 59(a)**

A court may order a new trial if the jury's verdict is "against the manifest weight of the evidence" or "if for other reasons the trial was not fair to the moving party." *Willis v. Lepine,* 687

F.3d 826, 836 (7th Cir. 2012). "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006). In his motions for a new trial, Plaintiff does not argue that the jury verdict was against the manifest weight of the evidence and instead focuses on reasons he believes the trial was "unfair." *See* Dkt. Nos. 188 & 189. Plaintiff's arguments are largely a repeat of objections already resolved through prior orders.

To be sure, this case was plagued by the difficulties that courts often see in cases brought by state prisoners. It was commenced in October of 2020 in the midst of the COVID pandemic and addressed an incident that occurred almost three years earlier in 2017. Seven years had passed by the time of trial. Eight separate attorneys from the Milwaukee City Attorneys Office entered appearances during the pendency of the case, and the court held numerous telephone conferences in an attempt to resolve discovery disputes that arose between the parties. Although the court considered recruiting counsel early on, Dkt. No. 24, it concluded that neither the complexity of the case, nor Plaintiff's competency required recruitment of counsel to assist Plaintiff in presenting a relatively straightforward case involving an allegedly unconstitutional seizure for a duration of less than an hour. As the case progressed, the court also considered the fact that Plaintiff expressed strong dissatisfaction with the experienced counsel the court had recruited to represent him in a previous trial. Case No. 19-cv-01059-WCG, *see* Dkt. Nos. 243, 247. Given Plaintiff's charge of misconduct against the experienced attorney and his associate who had represented Plaintiff in his earlier trial, the court was reluctant to ask another attorney to represent him in this case, especially in light of the difficulty in recruiting private counsel to take on what can turn out to be difficult clients. The court nevertheless did recruit Attorney George Burnett as stand-by counsel to assist Plaintiff at trial in this case. Dkt. No. 166. Over the course of the trial, Attorney Burnett took over

direct and cross examination of witnesses with Plaintiff's consent. In fact, at Plaintiff's request, Attorney Burnett gave the closing argument, including the rebuttal argument, on Plaintiff's behalf. Having presided over the trial, the court is satisfied that Plaintiff's motions should be denied.

Turning first to Plaintiff's Motion for a New Trial, Plaintiff claims that the Court "allowed" Officer Piontkowski, Officer Elm, and Officer Gonzalez to "introduce contradicting evidence to Rule 36 admissions." Dkt. No. 189 at 1-3. It is true that "[a]dmissions obtained under Rule 36 may be offered in evidence at trial of the action." Wright, Miller & Marcus, 8B FEDERAL PRACTICE AND PROCEDURE, § 2264 at 379 (Thomson Reuters 2010). But it is the duty of the party seeking to use the admission to lay the foundation for its use and assert it.

Plaintiff argues that any witness who attempted to make a statement at trial that was contradictory to their Rule 36 admission should have been limited to their discovery responses and should not have been allowed to testify at trial. *Id*. But Rule 36 admissions are only conclusive against the party making them. Fed. R. Civ. P. 36(b). Officer Piontkowski, the only remaining defendant at trial, could not be bound by admissions other dismissed parties had made. If Plaintiff believes that Piontowski testified inconsistently with his Rule 36 admissions, it was his obligation to object and bring it to the attention of the court. Attorney Burnett did so on his behalf and was permitted to read two of the admissions to the jury and the court instructed the jury that the facts admitted were deem conclusively proved. Dkt. No. 212 at 130:17–132:05. If any of the dismissed parties had testified inconsistently with their Rule 36 admissions as witnesses, Plaintiff was free to impeach them with their prior admissions. Toward that end, Plaintiff received the opportunity to cross-examine each of these witnesses at trial. *see* Dkt. No. 176. Assuming that they testified inconsistently with their admissions, Plaintiff has failed to identify any material discrepancy.

Second, Plaintiff claims that the Court "dismissed [his] entire witness list." Dkt. No. 189 at 3-4. Plaintiff, however, has mischaracterized the circumstances surrounding his witness list.

3

During the final pretrial conference, the Court directed counsel for the defendant officers to insure that the police officer witnesses on Plaintiff's witness list were available, including Officer Elm, Officer Iverson, Officer Gonzalez, and Sergeant Wroblewski. *See* Dkt. No. 164 at 1–2. The Court additionally noted that the Court itself would subpoena the remainder of Plaintiff's nine proposed witnesses, provided Plaintiff established before trial that those individuals had relevant testimony that was not duplicative of other available documentary evidence. *Id*.; Dkt. No. 210 at 53:23–54:14. Plaintiff never submitted any follow-up information showing that the testimony of any of the nine other proposed witnesses would be relevant and not duplicative of other available documentary evidence, so his own failure to act precluded his additional witnesses. Even now, Plaintiff has not explained why the absence of those witnesses denied him a fair trial.

Plaintiff now claims that Detective Johnson had relevant information because he was the officer who "originated" the investigative alert that identified Plaintiff as a witness (not a suspect). But the text of the investigative alert speaks for itself and was presented to the jury. Similarly, Plaintiff states that Cheryl Patane completed an investigation of the events giving rise to the lawsuit, but again, the words in her report speak for themselves and were presented to the jury. Officers Horn and Lemke were dispatchers on the day of the event, but as noted at the final pretrial conference, these individuals likely would not remember this incident that occurred in 2016 and their testimony would best be introduced through regularly kept business records. In short, all four of these additional witnesses would have only provided duplicative information best available through documentary evidence. There was nothing "unfair" about their absence at trial.

Third, Plaintiff claims that the Court showed "bias" and "discrimination" by directing him to "hurry up" during his opening statement and by saying "we would be in trial for weeks if Plaintiff continued to question the witness like this." Dkt. No. 189 at 4-7. Plaintiff states that these words were humiliating and intended to discriminate against his mental illness. *Id*. It should

4

be noted, however, that the court addressed its concerns with Plaintiff's presentation of his case outside the presence of the jury. Plaintiff received over 40 minutes for his opening statement, while Defendant only received 15 minutes. Dkt. No. 176 at 1. Further, the Court's allotted time of two days for trial was reasonable given that the dispute only involved one 30-to-40-minute police interaction with one Defendant. District courts are busy, and litigants are not entitled to unlimited amounts of time to present their case. Keeping a trial on track does not show bias, discrimination, or an intent to humiliate. The amount of time Plaintiff received to litigate his case was adequate and was not "unfair" to him. Moreover, the court recruited experienced counsel to serve a stand-by counsel during the trial. Stand-by counsel questioned most of the witnesses with Plaintiff's consent and even gave the closing argument to the jury at Plaintiff's request. Indeed, both the court and the parties, including Plaintiff, expressed their appreciation of the time and effort stand-by counsel had expended in presenting Plaintiff's case.

Fourth, Plaintiff claims "discovery fraud" because Officer Iverson's discovery responses were "completely contradictory" to what he said at trial. Dkt. No. 189 at 7. A witness who changes his story during the course of litigation is not committing "fraud"—he is simply giving an inconsistent statement that can be examined and scrutinized at trial. Plaintiff had the opportunity to cross-examine Officer Iverson and show the jury the inconsistencies in his story. *See* Dkt. No. 176. There was nothing "unfair" about Officer Iverson's testimony at trial.

Fifth, Plaintiff claims that the Court should have allowed a jury instruction for his "state law claims" of false arrest and false imprisonment. Dkt. No. 189 at 7-12. Although Plaintiff did assert state law claims for false arrest and false imprisonment in his original and amended complaint, it appears the court did not address either claim in its screening orders or its decision denying Officer Piontkowski's motion for summary judgment. Moreover, Plaintiff did not object to the jury instructions or the verdict form, neither of which address the two state law claims.

5

Under these circumstances, the court concludes the Plaintiff waived any error in failing to submit those claims.

Even aside from waiver, however, it appears that the jury's rejection of Plaintiff's Fourth Amendment claim would preclude his state law claims in any event. The jury answered "no" to the verdict question: "Did Plaintiff William Shaw prove that Defendant Randy Piontkowski arrested Plaintiff William Shaw without probable cause to believe he committed a crime?" "To prevail on a Fourth Amendment false-arrest claim, 'a plaintiff must show that there was no probable cause for his arrest.'" *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th 2022) (quoting *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016)). And since the false imprisonment claim was also predicated on Plaintiff's allegation that he was taken into custody without probable cause, it would appear that claim was also precluded by the jury's verdict. Under these circumstances, the court concludes that Plaintiff is not entitled to a new trial.

**2. Plaintiff's motion to amend the jury verdict under Rule 60(b)(3)**

Under Rule 60(b)(3), the Court may set aside a judgment if an opposing party engaged in fraud, misrepresentation, or misconduct. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). To obtain relief under Rule 60(b)(3), a party must show that he has a meritorious claim that she was prevented from "fully and fairly presenting" at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. *Id.* (quoting *Ty Inc. v. Softbelly's Inc.,* 353 F.3d 528, 536 (7th Cir. 2003). Fraud, misrepresentation, or misconduct is actionable only if it prejudices the adverse party. *Id.*; *see also Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The party seeking relief must establish all of this by "clear and convincing" evidence. *Id.*

Plaintiff argues that he is entitled to amendment of the jury verdict under Rule 60(b)(3) because Defendants allegedly committed "fraud" by changing their story during the course of litigation. Dkt. No. 190. Plaintiff contends that, throughout discovery, Defendants represented

6

that Officer Angela Gonzalez was the individual who was with her assigned partner, Officer Randy Piontkowski, "the entire time." *Id*. at 3-5.  However, at summary judgment and trial, Defendants represented that Officer Scott Iverson was the individual who was with Officer Piontkowski during the events.  *Id*. Plaintiff also notes that Officer Patrick Elm made inconsistent statements between his discovery responses and trial about whether or not he was personally involved in the events giving rise to this lawsuit.  *Id*. at 6-7.

To be sure, there were inconsistencies in the evidence as presented at trial and some of the responses to discovery requests.  As noted above, eight separate attorneys from the City Attorney's Office entered appearances over the years the case was pending.  The inconsistencies appeared the product of confusion and sloppiness, however, and did not benefit the defense.  The discrepancies were opportunities for Plaintiff to impeach the credibility of the defense witnesses, which Attorney Burnett did in his cross examinations.  As explained above, a witness who changes their story during the course of litigation is not committing "fraud"—they are simply giving an inconsistent statement that can be examined and scrutinized at trial.  Toward that end, all four individuals were called as witnesses during the trial, and Plaintiff had the opportunity to cross-examine them and show the jury the inconsistencies in their stories.  *See* Dkt. No. 176.  Despite Plaintiff's arguments, the jury found in the Defendant's favor, meaning they either believed Defendant's version of events or they did not believe that the inconsistencies were significant enough to question the witnesses' credibility.  Either way, the jury made a credibility determination, and it is not the Court's role to "reevaluate the credibility of witnesses" through post-trial motions.  *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir. 1993).  Plaintiff reiterates that any witnesses who made inconsistent statements should have been limited to their discovery responses and should not have been allowed to testify at trial.  But with the exception of Rule 36 admissions, a party cannot prevent a witness from offering testimony that is inconsistent with his pretrial

7

statements.  Doing so carries its own penalty—the likelihood that if the discrepancy is material, the witness will not be believed.  Plaintiff's remedy was to cross-examine witnesses to showcase their inconsistencies and, where appropriate, offer the admissions he had obtained during the discovery process, which he had the opportunity to do.  Because Plaintiff has no evidence of fraud or prejudice, the Court will deny his motion to amend the jury verdict.

### 3. Plaintiff's motion for sanctions

Plaintiff requested sanctions based on his allegations of "discovery fraud" noted in the sections above.  Dkt. No. 189.  The Court has already concluded that Defendants did not engage in any fraud by making contradictory statements between discovery responses, summary judgment, and trial.  Therefore, the motion for sanctions will be denied.

### 4. Plaintiff's "objection" to a stun belt.

Finally, Plaintiff filed an "objection" to the Court's decision to approve use of a "stun belt" during trial.  Dkt. No. 188.  Plaintiff explains that someone from the United States Marshals and/or the Department of Corrections placed a "high voltage device" on his body, underneath his clothing, during the second day of trial, so he was incapable of meaningfully participating at trial due to "extreme duress, anxiety, stress, fear, and intimidation."  Dkt. No. 188 at 3.

As a preliminary matter, Plaintiff did not raise an objection to the stun belt at trial and the court has no recollection of being told one was placed on him.  Having failed to object, the issue is waived.  *Sunny Handicraft (H.K.) Ltd. v. Envision This! LLC*, 66 F.4th 1094, 1098 (7th Cir. 2023) (noting that issues cannot be raised for the first time in post-trial motions).  That issue aside, a stun belt worn under the clothing and not visible to the jury is not harmful or prejudicial to a litigant.  Trial judges have "wide discretion" in determining what is necessary to maintain the security of the courtroom.  *Lemons v. Skidmore*, 985 F.2d 354, 358 (7th Cir. 1993).  This court usually consults the security staff if shackling or other security is recommended but retains

8

ultimate authority over what security is utilized in the courtroom. In this case, the correctional officers initially advised the court that they did not have concerns over Plaintiff's behavior, and the court directed that Plaintiff not be shackled in the courtroom. If instead, a stun belt was used as a safety precaution, the court is satisfied that it had no impact on the outcome of the trial.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for a new trial and "objection" to Judge Griesbach's harmful instructions to USMS (Dkt. No. 188) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's second motion for a new trial and motion for sanctions against all Defendants (Dkt. No. 189) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *pro se* motion to amend the jury's verdict under Rule 60 (Dkt. No. 190) is **DENIED**.

Dated at Green Bay, Wisconsin this 23rd day of September, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge